IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LARRY N. JORDAN,** | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | NO. 10-5458 |
| v. | : | |
| | : | |
| **YUM BRANDS, INC.,** and, | : | |
| **PIZZA HUT OF AMERICA, INC.**, | : | |
| Defendants. | : | |

DuBois, J.                                                                                                                               July 24, 2013

## **M E M O R A N D U M**

### I. INTRODUCTION

This case arises out of injuries plaintiff Larry Jordan suffered from an altercation with a third-party on December 28, 2008, in a Pizza Hut restaurant operated by defendant Pizza Hut of America, Inc. ("Pizza Hut"). In his Complaint, plaintiff asserts claims of negligence against both Pizza Hut and defendant Yum! Brands, Inc., the parent company of Pizza Hut. Plaintiff provided the expert report of David A. Gordon in support of that claim.

Presently before the Court are defendants' motion to exclude the testimony of plaintiff's expert and motion for summary judgment. For the reasons stated below, the Court grants defendants' motion to exclude the testimony of plaintiff's expert and denies the motion for summary judgment.

### II. BACKGROUND

In the afternoon of December 28, 2008, plaintiff was inside a Pizza Hut restaurant located at 240 South 69th Street, Upper Darby, Pennsylvania, in order to pick up pizzas he had previously ordered. (Defendants' Statement of Material Facts ("SOMF") ¶ 1.) An altercation began outside the restaurant between a Pizza Hut delivery driver and several patrons who had been in the

restaurant. (SOMF ¶ 2-3.) The restaurant General Manager, Gerald Horton, was alerted to the fight outside and asked that someone call 911. He then exited the restaurant, intending to try to stop the altercation. (SOMF ¶ 3-4.) The parties dispute whether Mr. Horton waited to ensure the police were called before he left the restaurant. Nonetheless, a customer called 911 at Mr. Horton's request. (SOMF ¶ 3.)

Plaintiff waited inside the restaurant during the initial altercation. Kwame Thompson, a customer involved in the fight outside the restaurant, returned to the restaurant prior to Mr. Horton's return. (SOMF ¶ 5.) Mr. Thompson walked to the counter and pushed off the counter two pizza boxes, which contained plaintiff's pizzas. (*Id*.) Plaintiff then grabbed Mr. Thompson's arms. (*Id*.) The parties dispute whether plaintiff, in doing so, was attempting to defuse the situation or was instigating a confrontation. Regardless of plaintiff's motivation, Mr. Thompson and his companions responded by striking and injuring plaintiff. (*Id*.) Mr. Horton returned to the restaurant approximately ten seconds after the second altercation and intervened to stop the fight. (SOMF ¶¶ 6-7.) Mr. Horton then removed Mr. Thompson and others from the restaurant, and plaintiff remained inside. (SOMF ¶ 6.) Police and medical personnel arrived shortly thereafter, and several individuals were arrested. (*Id*.) Plaintiff allegedly suffered severe injuries from the incident, including damage to his right eye. (Compl. ¶ 14.) Security footage from a closed circuit television video system captured the incident inside the restaurant and has been preserved. (SOMF ¶ 2.)

## III. *DAUBERT* MOTION

### A. Legal Standard

Federal Rule of Evidence 702 provides as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to

2

> understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The "pathmarking" Supreme Court cases interpreting Rule 702 are *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). *United States v. Mitchell*, 365 F.3d 215, 234 (3d Cir. 2004). In *Daubert*, the Supreme Court held that "[f]aced with a proffer of expert scientific testimony . . . the trial judge must determine at the outset . . . whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Daubert*, 509 U.S. at 592. In *Kumho Tire*, the Supreme Court made clear that the *Daubert* gatekeeping function extends beyond scientific testimony to testimony based on "technical" and "other specialized" knowledge. 526 U.S. at 141.

Under *Daubert*, courts must address a "trilogy of restrictions" before permitting the admission of expert testimony: qualification, reliability and fit. *Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003); *see also Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000). The party offering the expert must prove each of these requirements by a preponderance of the evidence. *In re TMI Litig.*, 193 F.3d 613, 663 (3d Cir. 1999).

1. <u>Qualification</u>

To qualify as an expert, "Rule 702 requires the witness to have 'specialized knowledge' regarding the area of testimony." *Betterbox Commc'ns Ltd. v. BB Techs., Inc.*, 300 F.3d 325, 335 (3d Cir. 2002) (quoting *Waldorf v. Shuta*, 142 F.3d 601, 625 (3d Cir. 1998)). The Third Circuit has instructed courts to interpret the qualification requirement "liberally" and not to insist on a certain kind of degree or background when evaluating the qualifications of an expert. *See*

*Waldorf*, 142 F.3d at 625. "The language of Rule 702 and the accompanying advisory committee notes make clear that various kinds of 'knowledge, skill, experience, training, or education,' qualify an expert as such." *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 855 (3d Cir. 1990) (quoting Fed. R. Evid. 702) ("*Paoli I*").

Moreover, "[t]his liberal policy of admissibility extends to the substantive as well as the formal qualifications of experts." *Pineda v. Ford Motor Co.*, 520 F.3d 237, 244 (3d Cir. 2008). Thus, "it is an abuse of discretion to exclude testimony simply because the trial court does not deem the proposed expert to be the best qualified or because the proposed expert does not have the specialization that the court considers most appropriate." *Id.* (quoting *Holbrook v. Lykes Bros. S.S. Co.*, 80 F.3d 777, 782 (3d Cir.1996)).

2. Reliability

The reliability requirement of *Daubert* "means that the expert's opinion must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation'; the expert must have 'good grounds' for his or her belief." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 742 (3d Cir. 1994) ("*Paoli II*") (quoting *Daubert*, 509 U.S. at 590). In *Kumho Tire*, the Supreme Court held that the *Daubert* test of reliability is "flexible" and that "the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination." 526 U.S. at 141-42 (emphasis omitted). In determining whether the reliability requirement is met, courts examine the following factors where appropriate:

> (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the

expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.

*Mitchell*, 365 F.3d at 235 (citing *Paoli II*, 35 F.3d at 742 n.8). These factors are neither exhaustive nor applicable in every case. *Kannankeril v. Terminix Int'l Inc.*, 128 F.3d 802, 806-07 (3d Cir. 1997).

Under the *Daubert* reliability prong, parties "do not have to demonstrate to the judge by a preponderance of the evidence that the assessments of their experts are correct, they only have to demonstrate by a preponderance of evidence that their opinions are reliable." *Paoli II*, 35 F.3d at 744 (emphasis omitted). "The evidentiary requirement of reliability is lower than the merits standard of correctness." *Id.* "As long as an expert's scientific testimony rests upon 'good grounds, based on what is known,' it should be tested by the adversary process – competing expert testimony and active cross-examination – rather than excluded from jurors' scrutiny for fear that they will not grasp its complexities or satisfactorily weigh its inadequacies." *Mitchell*, 365 F.3d at 244 (quoting *Ruiz-Troche v. Pepsi Cola of Puerto Rico Bottling Co.*, 161 F.3d 77, 85 (1st Cir. 1998)).

### 3. Fit

For expert testimony to meet the *Daubert* "fit" requirement, it must "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. "This condition goes primarily to relevance. Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591 (citations and internal quotation marks omitted). "'Fit' is not always obvious, and scientific validity for one purpose is not necessarily scientific validity for other, unrelated purposes." *Id.*

5

B. Discussion

Defendants seek to exclude the testimony of plaintiff's proposed expert, David A. Gordon. Mr. Gordon has provided opinions regarding the safety precautions and actions of defendants. First, he opines that the restaurant door should have been locked as soon as the initial altercation began outside, thereby protecting the customers inside the restaurant from the re-entry of any individuals involved in the initial altercation. (Pl.'s Exhibit 1 ¶ 15.) To that end, he states that defendants should have installed a magnetic lock on the customer entrance. (Pl.'s Exhibit 1 ¶ 13.) Second, he opines that the customers inside the restaurant should have been ushered to the back of the store for their safety. (Pl.'s Exhibit 1 ¶ 15.) Finally, he opines that defendants failed to have a sound safety policy in place or had deficient training of its employees because the door was not locked and/or the customers inside the restaurant were not ushered to a safe location. (Pl.'s Exhibit 1 ¶ 16.) Mr. Gordon concludes that "[b]ut for the negligence of Pizza Hut and its employees, agents and servants, Larry Jordan would not have suffered and sustained the injuries on [December 28, 2008]." (Pl.'s Exhibit 1 ¶ 3.)

Defendants argue that plaintiff's proposed expert is not qualified under *Daubert* to testify at trial. Specifically, they argue that (1) he is unqualified to render an opinion in this case; (2) his opinions are unreliable because they are not based on any authority or policy; and (3) his opinions do not fit the facts of the case. For the following reasons, the Court concludes that Mr. Gordon's opinions are unreliable under *Daubert*, and it therefore need not address whether he is qualified or whether his opinions fit the case.

1. Expert's Reliability

As a basis for his opinion, Mr. Gordon reviewed the Complaint filed by plaintiff, plaintiff's deposition in this case, the deposition of Pizza Hut Loss Prevention Manager Mark Loveless in this

case, and the transcripts of the delivery driver's worker's compensation deposition from March 2009. (Pl.'s Exhibit 1 ¶ 8.) He also reviewed the crime statistics for the Upper Darby, Pennsylvania area and information about an attempted armed robbery of the Pizza Hut restaurant at issue two and half months prior to the altercation in this case. (*Id*.) Finally, Mr. Gordon reviewed the security footage of the inside of the Pizza Hut restaurant, which showed the incident. (*Id*.)

Defendants take the position that Mr. Gordon's conclusions are unreliable because they are not based on any specialized knowledge. They argue that Mr. Gordon cites no industry standards or other authority for his security opinions. They contend that he instead offers an opinion based on nothing but hindsight. They argue that his opinion that defendants did not have a sound security policy in place is erroneous because he did not review the actual security policy that was in place. Finally, they argue that Mr. Gordon ignores the practical and legal risks defendants would have encountered had they proceeded as he opined.

Plaintiff counters that Mr. Gordon's opinions are reliable. He argues that, since the opinions are not scientific in nature, there is no requirement for testing, and that the opinions were based on industry standards.

The Court concludes that Mr. Gordon's opinions are not reliable. "If *Daubert* and its progeny require anything, it is that plaintiffs come forward with proof of a valid methodology based on more than just the *ipse dixit* of the expert." *Pappas v. Sony Elecs., Inc.*, 136 F. Supp. 2d 413, 426 (W.D. Pa. 2000). The use of "little, if any, methodology beyond [an expert's] own intuition" renders such an opinion unreliable. *See Oddi v. Ford Motor Co.*, 234 F.3d 136, 158 (3d Cir. 2000).

Mr. Gordon did not state in his report that he relied on industry standards for security needs

of fast-food restaurants in reaching his opinions, and there is no evidence that he did so. Moreover, he does not explain how he reached his opinions. In short, he has provided no methodology. Such lack of methodology renders Mr. Gordon's opinions unreliable under *Daubert*.

    C. Conclusion

For the foregoing reasons, Mr. Gordon's opinions do not satisfy *Daubert*'s reliability requirement. In view of that determination, the Court need not reach the question of whether Mr. Gordon is qualified or whether his opinions fit the case. The Court grants defendants' motion to preclude Mr. Gordon's testimony.

**IV.**    **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

    A. Legal Standard

In considering a motion for summary judgment, "the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). The party opposing the motion, however, cannot "rely merely upon bare assertions, conclusory allegations or suspicions" to support its claim. *Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982). After examining the evidence of record, a court should grant a motion for summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *accord Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

A factual dispute is material when it "might affect the outcome of the suit under the governing law," and genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

8

"Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

    B. Discussion

In Pennsylvania, a possessor of land is "subject to liability … for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons … and by the failure of the possessor to exercise reasonable care to (a) discover that such acts are being done or likely to be done, or (b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it." Restatement (Second) of Torts § 344 (1965); *see also Moran v. Valley Forge Drive-In Theater, Inc.*, 246 A.2d 875, 878 (Pa. 1968) (adopting Restatement (Second) of Torts § 344 as Pennsylvania law).

A possessor of land may be liable for the acts of third parties if the possessor "had notice, either actual or constructive, of prior acts committed by third persons within their premises which might cause injuries to patrons." *Moran*, 246 A.2d at 879. "In other words, courts examine whether (1) the nature of defendant's business is such that it is an inherently dangerous place, and (2) the danger that resulted in plaintiff's injury was consistent with defendant's experience – i.e., had previously occurred at that business – so that defendant should have foreseen it." *Vazquez v. Wal-Mart Stores, Inc.*, 2010 WL 3191852, at *4 (E.D. Pa. Aug. 5, 2010). Although a possessor of land is not the "insurer of the safety of his patrons" and is not tasked with providing "absolute protection of all patrons," a possessor still must ensure "that reasonable measures be taken to control the conduct of third persons, or to give adequate warning to enable patrons to avoid possible harm." *Moran*, 246 A.2d at 879.

9

1. Actual or Constructive Notice

Plaintiff argues that defendants had actual or constructive notice of the danger to patrons based on defendants' experience with criminal acts at the restaurant and in the area. Specifically, there was an attempted armed robbery of the restaurant in October 2008 – approximately two and half months prior the incident at issue. Further, plaintiff points out that in October 2006 and again in October 2008, a delivery driver was robbed by gunpoint while making a delivery. Finally, plaintiff argues the crime statistics for Upper Darby, Pennsylvania – the location of the restaurant – reflect the dangerous nature of the area and put defendants on notice of a need to protect patrons in the restaurant from the acts of third-parties.

Defendants dispute that they had actual or constructive notice of potential danger to their patrons from the acts of third-parties. They argue that the two armed robberies of delivery drivers occurred away from the restaurant and could not put defendants on notice of the type of altercation at issue in this case. Second, they argue that crime statistics for Upper Darby are too general and cover too large an area to provide notice to defendants of the risks to their patrons. Further, they contend that if the Court considers the crime statistics, the statistics and few incidents at the restaurant show that the restaurant is uncommonly safe relative to its surroundings. Finally, defendants argue that the single attempted robbery of the restaurant in October 2008 is insufficient to put them on notice of a need to protect patrons in the restaurant from the acts of third-parties.

Based on the foregoing, there is a genuine dispute of material fact with respect to whether defendants had actual or constructive notice of the potential danger to patrons from acts of third-parties in the restaurant. In so ruling, the Court is not deciding whether all of the proffered evidence related to actual or constructive notice is admissible at trial. The decision on this issue is without prejudice to defendants' right to object to any inadmissible evidence at trial.

2. <u>Reasonable Measures Employed</u>

Plaintiff argues that defendants failed to employ reasonable measures to ensure the protection of their patrons. In making that argument, plaintiff relies on the expert report of Mr. Gordon, who opined on the security measures defendants should have had in place to protect against the risk of injury to patrons caused by third-parties.

The Court has already ruled that Mr. Gordon may not testify as an expert witness at trial. Nonetheless, the exclusion of Mr. Gordon is not fatal to plaintiff's theory of negligence. "As a general principle, '[e]xpert evidence is not necessary ... if all the primary facts can be accurately and intelligibly described to the jury, and if they, as [persons] of common understanding, are as capable of comprehending the primary facts and of drawing correct conclusions from them as are witnesses possessed of special or peculiar training of the subject under investigation.'" *See Oddi v. Ford Motor Co.*, 234 F.3d 136, 159 (3d Cir. 2000) (quoting *Padillas v. Stork–Gamco, Inc.*, 186 F.3d 412, 415-16 (3d Cir. 1999)). This is not a case where a jury requires the aid of an expert. Plaintiff must show that defendants should have taken "reasonable measures … to control the conduct of third persons." *See Moran*, 246 A.2d at 879. "It then becomes a question of fact for the jury as to whether or not the [defendants] fulfilled [their] responsibility under the law." *Id*.

In this case, there is evidence, in the form of testimony and security footage, of the actions of plaintiff and defendants' employees during the two altercations on December 28, 2008, and evidence regarding prior incidents in and around the restaurant in the years prior to the altercations. The jury is capable of determining whether the conduct of defendants' employees, including Mr. Horton, was reasonable in light of all of the circumstances presented without the aid of expert testimony. Further, the jury must determine whether plaintiff's conduct contributed, in whole or in part, to the altercation that resulted in his injuries.

There are genuine disputes of material fact regarding the reasonableness of the parties' actions before and during the events of December 28, 2008. Thus, defendants' motion for summary judgment is denied.

## V. CONCLUSION

For the foregoing reasons, the Court grants defendants' *Daubert* Motion and denies defendants' Motion for Summary Judgment. An appropriate order follows.